## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL R. HOLMES**                              CIVIL ACTION

**VERSUS**                                                    No. 23-1247

**ROBERT M. WHITE ET AL.**                        SECTION I

### ORDER & REASONS

Before the Court is a motion[1] to dismiss plaintiff Michael R. Holmes's ("Holmes") claims against defendants Charles J. Ballay ("Ballay"), individually and in his official capacity as district attorney of Plaquemines Parish, and Robert M. White ("White")[2] (collectively, "defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] Holmes opposes the motion.[4] Defendants filed a reply.[5] For the reasons that follow, the Court grants the motion.

### I.    FACTUAL BACKGROUND

This lawsuit arises from a September 23, 2018 incident in which Holmes

---

[1] R. Doc. No. 36.

[2] The complaint does not name White "individually and in his official capacity as assistant district attorney." *See* R. Doc. No. 23, ¶¶ 5, 94.

[3] Although the motion states that defendants move for dismissal pursuant to Rules 12(b)(1) and 12(b)(6), R. Doc. No. 36, at 1, defendants make no arguments pursuant to Rule 12(b)(1). The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Holmes's claims arise under 42 U.S.C. § 1983, a federal law. The Court also has supplemental jurisdiction over Holmes's state-law claims pursuant to 28 U.S.C. § 1367(a). The Court notes that Holmes's amended complaint also names three additional defendants who did not join the present motion. These defendants are Gerald A. Turlich, Jr., Daniel R. Martiny, and Martiny & Associates, LLC. R. Doc. No. 23, ¶¶ 7–9.

[4] R. Doc. No. 39. Holmes also filed a supplemental memorandum apprising the Court of certain citations that were not referenced in his opposition. R. Doc. No. 42.

[5] R. Doc. No. 43.

alleges he was "unreasonably detained, assaulted and battered, and unlawfully arrested by deputies of the Plaquemines Parish Sheriff's Office" after he was seen taking photographs of a carnival amusement ride at a Catholic school's fair event.[6] This is Holmes's second federal lawsuit relating to this incident.

In Holmes's first lawsuit pursuant to 42 U.S.C. § 1983, this Court held a three-day jury trial.[7] On May 17, 2023, the jury found a single defendant, Sheriff's Deputy Corbett Reddoch ("Reddoch"), liable to Holmes for Fourth Amendment violations, state-law battery, state-law false arrest or imprisonment, and state-law malicious prosecution.[8] This Court then entered judgment in Holmes's favor.[9] That judgment is now on appeal to the U.S. Court of Appeals for the Fifth Circuit.[10]

In the instant lawsuit, Holmes alleges that, on December 6, 2018, defendants charged Holmes with one count of resisting an officer in violation of Louisiana Revised Statute § 14:108.1 despite knowing that the charge was baseless.[11] According to Holmes, defendants filed the charge in order "to extract or coerce an agreement by [Holmes] to forego filing a civil claim against Sheriff [Gerald Turlich] and the [S]heriff's deputies."[12] White allegedly reviewed Holmes's photos and stated they were "innocuous."[13] However, Holmes asserts that White "refused to dismiss the

---

[6] R. Doc. No. 23, ¶ 10.
[7] E.D. La. Case No. 19-12749, R. Doc. No. 205 (minute entry for jury trial).
[8] E.D. La. Case No. 19-12749, R. Doc. No. 219 (jury verdict form).
[9] E.D. La. Case No. 19-12749, R. Doc. No. 230 (judgment).
[10] E.D. La. Case No. 19-12749, R. Doc. No. 231 (notice of appeal).
[11] R. Doc. No. 23, ¶¶ 29–37.
[12] *Id.* ¶ 37.
[13] *Id.* ¶ 38.

charge unconditionally and . . . insisted that [Holmes] agree to an 'informal diversion' and to forego civil action."[14] Holmes asserts that the purpose of the diversion agreement was "to protect the Sheriff and his deputies from civil liability" pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).[15] Holmes pleaded not guilty to the charge and continued to refuse to agree to any arrangement requiring him to give up his right to file a civil lawsuit.[16]

"[T]he [state court] criminal record reflects a minute entry [from September 24, 2019, which] reads: 'On motion of the State, this matter is dismissed. Completed informal diversionary program.'"[17] According to the minute entry, the district court judge, the assistant district attorney, and the district court reporter were present in court at the time of the dismissal.[18] Holmes alleges that he was unaware of the minute entry until certain defendants mentioned it in a motion for summary judgment filed in his first civil rights lawsuit before this Court.[19] In August 2021, Holmes filed a motion to correct the minute entry, asserting that the minute entry was inaccurate because it was based on his completion of a pretrial diversion program which he did not complete. *State v. Holmes*, 338 So. 3d 46, 46 (La. App. 4th Cir. 2022).[20] The state court denied Holmes's motion, but noted that his criminal case

---

[14] *Id.*

[15] *Id.* ¶ 44.

[16] *Id.* ¶¶ 38–41.

[17] *Id.* ¶ 42.

[18] *Id.*

[19] *Id.*

[20] Holmes attached this Louisiana Fourth Circuit Court of Appeal opinion to his amended complaint. *See id.* at 24–31.

seemed to be active because the record contained no written record of a dismissal. *Id.* at 47.

On October 8, 2021, Holmes filed a motion to quash the bill of information based on the expiration of the one-year time limitation for trial for misdemeanors pursuant to Louisiana law. *Id.* The state opposed the motion to quash, arguing that the district attorney had already orally dismissed Holmes's case, as evidenced by the minute entry. *Id.* at 47–48. The state district court held a hearing on the motion to quash and found that Louisiana law "require[d] the State to either file a written statement of dismissal in the court record or dismiss the bill of information orally in open court." *Id.* at 48. Because there was neither a written statement of dismissal in the record nor a transcript reflecting an oral dismissal made in open court, the state district court granted Holmes's motion to quash. *Id.* at 48. The state appealed. *Id.*

On April 13, 2022, the Louisiana Fourth Circuit Court of Appeal affirmed the state district court's decision to quash the bill of information. *Id.* at 49.  In so doing, the appellate court noted that Holmes had "cast[] doubt on the accuracy of the . . . minute entry." *Id.* at 49. Again, according to Holmes, the minute entry's assertion that Holmes had agreed to an informal diversion "was nothing more than an attempt to obtain protection from suit for [Turlich]."[21]

Holmes filed the original complaint in this action on April 13, 2023.[22] The case was initially assigned to another section of this Court.[23] On August 8, 2023,

---

[21] *Id.* ¶ 49.
[22] R. Doc. No. 1.
[23] *See* R. Doc. No. 29 (order transferring case to the undersigned).

defendants moved to dismiss the complaint.[24] In his opposition to their motion to dismiss, Holmes requested leave to amend his complaint.[25] The Court granted Holmes leave to amend[26] and, once Holmes filed an amended complaint,[27] denied defendants' motion to dismiss without prejudice.[28] Holmes's amended complaint, brought pursuant to 42 U.S.C. § 1983, alleges that defendants violated his First, Fourth, and Fifth Amendment rights.[29] The complaint further alleges that defendants committed several Louisiana state-law torts, including infliction of emotional distress, defamation, fraud, and abuse of process.[30]

Defendants then filed the instant motion to dismiss, arguing that Holmes's amended complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[31] Specifically, defendants contend that Holmes's federal claims and state-law tort claims are barred by the doctrine of absolute immunity.[32] Defendants also argue that all Holmes's claims against them are prescribed.[33] Additionally, defendants assert that any claims against them in their official capacities are barred by the Eleventh Amendment.[34] Defendants further argue that Holmes's complaint fails to state a claim against White in his official capacity because an assistant district

---

[24] R. Doc. No. 10.
[25] R. Doc. No. 16, at 2.
[26] R. Doc. No. 20.
[27] R. Doc. No. 23.
[28] R. Doc. No. 24.
[29] R. Doc. No. 23, ¶¶ 69–72.
[30] *Id.* ¶¶ 75–79.
[31] R. Doc. No. 36.
[32] R. Doc. No. 36-1, at 11–19.
[33] *Id.* at 19–21.
[34] *Id.* at 21.

attorney cannot be sued in his official capacity.[35] Defendants also contend that the complaint fails to state a claim against both defendants in their official capacities because such claims are barred by absolute immunity and because the complaint does not state the elements of a claim pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[36] Finally, defendants argue that Holmes's complaint fails to state a claim for defamation because Holmes failed to allege with reasonable specificity which statements were defamatory.[37]

In response, Holmes urges the Court to accept as true various allegations in the complaint pursuant to the Rule 12(b)(6) standard.[38] Holmes also argues that defendants are not entitled to absolute immunity and that his claims are not prescribed.[39] Holmes further states that his memorandum in opposition incorporates by reference the opposition he filed in response to defendants' first motion to dismiss.[40]

## II.    STANDARD OF LAW

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Together, these rules demand "sufficient

---

[35] *Id.* at 21–22.
[36] *Id.* at 22–25.
[37] *Id.* at 25. The Court does not reach this argument because it concludes the defamation claim must be dismissed on other grounds.
[38] R. Doc. No. 39, at 3–5.
[39] *Id.* at 6–8.
[40] *Id.* at 3 (referencing R. Doc. No. 16).

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted).

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of *each element* of the plaintiffs' claim." *Hi-Tech Elec., Inc v. T&B Constr. & Elec. Servs., Inc.*, No. 15-3034, 2017 WL 615414, at *2 (E.D. La. Feb. 15, 2017) (Vance, J.) (emphasis added) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal quotations omitted).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted). Thus, "[a] claim for relief is implausible on its

face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

In considering a motion to dismiss, a district court views the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "[A] district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)). However, district courts may consider matters of which they may take judicial notice and "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

### III.   ANALYSIS

#### a.   Prescription

To begin, the Court finds that most of the allegations in Holmes's complaint fail to state a claim against defendants pursuant to Rule 12(b)(6) because they are prescribed. *See Jones v. Aloca, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for the tolling or the like.").

*i. Federal Claims*

Defendants first argue that Holmes's § 1983 claims are prescribed. "The limitations period for § 1983 claims is determined by state personal injury law." *Walker v. Epps*, 550 F.3d 407, 411 (5th Cir. 2008). The parties appear to agree that the applicable period in this case is one year.[41] *See* La. Civ. Code Ann. art 3492 ("Delictual actions are subject to a liberative prescription of one year.").

While Louisiana law determines the limitations period for plaintiff's § 1983 claims, federal law determines the accrual of these claims. *Walker*, 550 F.3d at 414. Pursuant to federal law, an action accrues when a plaintiff has "a complete and present cause of action" or when "the plaintiff can file suit and obtain relief." *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Generally, "the limitations period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)).

To the extent some of Holmes's § 1983 claims are analogous to the common law tort of malicious prosecution, however, "a malicious prosecution claim only accrues once the criminal charges are dismissed." *Aly v. City of Lake Jackson*, 453 F. App'x 538, 539 (5th Cir. 2011) (per curiam) (citing *Heck*, 512 U.S. at 484); *see also Thompson v. Clark*, 596 U.S. 36, 39 (2022) (explaining that, to satisfy *Heck*'s favorable termination requirement, a plaintiff need only show that his prosecution ended

---

[41] *See* R. Doc. No. 36-1, at 19 (defendants' memorandum stating that "[t]he applicable period here is one year"); R. Doc. No. 39, at 8 (plaintiff's memorandum arguing that "plaintiff filed this suit . . . within one year of the termination of the criminal proceeding").

without a conviction).

According to defendants, in the motion to correct the minute entry which Holmes filed in state court in 2021, Holmes made many of the same allegations he now makes in the instant complaint.[42] Defendants contend that this shows Holmes has been aware that he suffered an injury since at least August 2021.[43] For example, in a state-court filing, Holmes asserted that "the District Attorney embarked on a concerted effort to protect the offending deputies and the Sheriff from civil liability by forcing [] Holmes to forego his right to redress under threat of prosecution[.]"[44]

As stated, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris*, 500 F.3d at 461 n.9 (citing *Cinel*, 15 F.3d at 1343 n.6).[45] The records from Holmes's criminal prosecution in state court are matters of public record. *See Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (finding that a district court "was allowed to take judicial notice of [a] state court's orders, final judgment, and docket as matters of public record attached to the motion to dismiss"). Accordingly, the Court takes judicial notice that Holmes's previous filings in state court "exist and that they say what they say." *Luv n' care, Ltd. v. Jackel Int'l Ltd.*, 402 F. Supp. 3d 1106, 1110 (W.D. La. 2020) (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 n.18 (5th Cir. 1998)). To be clear, the

---

[42] R. Doc. No. 36-1, at 20 (citing R. Doc. No. 36-2 (excerpt of state-court appeal record), at 7–19).

[43] *Id.*

[44] R. Doc. No. 36-2, at 9.

[45] Accordingly, defendants' motion to dismiss need not be converted to a motion for summary judgment as Holmes argued in response to defendants' original motion to dismiss. *See* R. Doc. No. 16, at 3.

Court is not taking notice of the truthfulness of any facts underlying the state-court pleadings. *Id.*

Holmes contends that his § 1983 claims accrued on April 13, 2022, the date on which the Louisiana Fourth Circuit Court of Appeal affirmed the district court's decision to quash the bill of information filed against him.[46] Holmes therefore argues that he asserted his § 1983 claims within the one-year statute of limitations by filing the instant lawsuit on April 13, 2023.[47] He also suggests that, even if his § 1983 claims accrued before this date, his claims are not prescribed pursuant to the Louisiana principle of *contra non valentem agere non currit praescriptio*—that is, "prescription does not run against one unable to act."[48]

Reviewing the complaint and the state court record, it is clear that Holmes became aware that he had suffered an alleged injury in connection with the allegedly falsified minute entry sooner than April 13, 2022. At a minimum, Holmes was aware of the injuries he alleges in the instant lawsuit on September 28, 2021. On that date, Holmes filed a supplemental memorandum in support of his motion to correct the minute entry, making many of the same allegations he has made in the present lawsuit.[49]

Additionally, to the extent Holmes's federal claims are analogous to a malicious prosecution claim, Holmes's prosecution "ended without a conviction" earlier than

---

[46] R. Doc. No. 39, at 8; R. Doc. No. 16, at 6–7.
[47] R. Doc. No. 39, at 8.
[48] *See id.*; *see also Rajnowski v. St. Patrick's Hosp.*, 564 So. 2d 671, 674 n.6 (La. 1990) (translating the "*contra non valentem*" principle).
[49] R. Doc. No. 36-2, at 7–15.

April 13, 2022. *Thompson*, 596 U.S. at 39. Specifically, Holmes's prosecution ended without a conviction when the state trial court granted Holmes's motion to quash the bill of information in 2021 (at the latest).[50] At that point, Louisiana's one-year limitations period to prosecute misdemeanors had definitively expired since the bill of information was filed on December 6, 2018.[51] Although the state appealed the court's decision regarding the motion to quash, its argument on appeal was that the charges had already been dismissed in 2019, not that the charges should be reinstated. *Holmes*, 338 So. 3d at 48. Accordingly, the Court finds that Holmes's cause of action accrued no later than the date the bill of information was quashed. The exact date the district court quashed the bill is not apparent to the Court based on the face of the complaint or the state court records provided. However, it is clear from the state court records that the state filed its notice of appeal on December 23, 2021.[52] Accordingly, the district court must have quashed the bill in 2021, more than one year before Holmes filed the instant lawsuit.

There is also no indication that Louisiana's *contra non valentem* principle tolls prescription in this case. The Fifth Circuit has explained that this principle provides for tolling in four situations:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

---

[50] As defendants point out, in a brief filed in this Court on April 15, 2023 during the course of Holmes's first federal lawsuit, Holmes asserted that the state's charge against him was "dismissed before trial" since it was "first dismissed by the prosecutor [in 2019] . . . and later quashed by the court [in 2021]." *See* E.D. La. Case No. 19-12749, R. Doc. No. 216.

[51] *See* R. Doc. No. 23, ¶ 29.

[52] *See* R. Doc. No. 36-2, at 4.

> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
> (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though the plaintiff's ignorance is not induced by the defendant.

*Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 394 (5th Cir. 2020) (citing *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 2010)).  However, "[c]*ontra non valentem* does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so." *Id.* (quoting *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002)).

Nothing in the pleadings or in Holmes's response to the instant motion suggests that there is any basis for applying the doctrine. To the contrary, Holmes apparently knew of his alleged injuries and potential claims against defendants as early as September 2021. *Contra non valentem* does not suspend prescription merely based on Holmes's failure to bring these claims sooner. *See Bradley*, 958 F.3d at 394. Holmes's arguments that the applicability of this doctrine "depends on specific facts particular to a given case" and that "[w]hether plaintiff prevails on this factual question is for the jury to decide"[53] are unavailing. To survive the instant Rule 12(b)(6) motion, Holmes must allege sufficient facts to suggest that his claims are not prescribed or that the prescriptive period was tolled. *See, e.g.*, *Crane v. Childers*, 655 F. App'x 203, 204–05 (affirming district court's dismissal of plaintiff's § 1983 claims

---

[53] R. Doc. No. 39, at 8.

pursuant to Rule 12(b)(6) because the prescriptive period for the complaint had expired and was not suspended pursuant to *contra non valentem*).

With respect to Holmes's allegations that defendants produced a false affidavit asserting that White had reached a diversion agreement with Holmes during the state-court appeal,[54] the Court lacks sufficient information to determine whether claims arising from these allegations are prescribed because it is not clear from the face of the complaint exactly when this false affidavit was allegedly withheld and then produced.

Similarly, with respect to Holmes's allegations that defendants conspired with Turlich's attorney to threaten to reinstate criminal charges against him,[55] it is not clear from the face of the complaint when Holmes "knew or should have known of any of the overt acts involved in the alleged conspiracy." *Donahue v. Strain*, No. 15-6036 2017 WL 3311241, at *11–13 (E.D. La. 2017) (Morgan, J.) (citing *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987)). Regardless, as discussed in the following two sections, these claims are barred by absolute immunity to the extent they are brought against the defendants in their individual capacities and fail to state a plausible claim for relief to the extent they are brought against defendants in their official capacities.

*ii. State-Law Claims*

Like Holmes's federal claims, Holmes's state-law tort claims are subject to a one-year prescriptive period pursuant to article 3492 of Louisiana's Civil Code.

---

[54] R. Doc. No. 23, ¶ 53.
[55] *Id.* ¶ 61.

Defendants therefore argue that Holmes's state-law claims are also time-barred.[56] To the extent Holmes's state claims overlap with his federal claims, the Court finds that those claims are time-barred as set forth in the previous subsection.

However, Holmes's state-law defamation claim does not appear to be time-barred. As defendants assert,[57] Holmes's defamation claim seems to be based on what was allegedly written in the state's briefing in state court.[58] Defendants argue that more than one year had passed since the state's brief was filed on February 3, 2022 when Holmes filed the instant lawsuit.[59] Yet Holmes asserts that "defamation by attorneys during the course of litigation becomes actionable only at the termination of the original litigation[.]"[60] Indeed, pursuant to Louisiana law, an action arising from allegedly defamatory statements made in a judicial proceeding "cannot be brought by a party to the judicial proceeding until the proceeding is terminated." *Doe v. Roman Cath. Church of Archdiocese of New Orleans*, 588 F. Supp. 3d 698, 720 (E.D. La. 2022) (Morgan, J.) (quoting *Calvert v. Simon*, 311 So. 2d 13, 15 (La. App. 2d Cir. 1975)).[61] Regardless, as set forth below, defendants are absolutely immune from Holmes's state-law defamation claim.

---

[56] R. Doc. No. 36-1, at 21.

[57] *Id.*

[58] *See* R. Doc. No. 23, ¶¶ 54–60.

[59] R. Doc. No. 36-1, at 21.

[60] R. Doc. No. 39, at 8; R. Doc. No. 42, at 1–2.

[61] In reply, defendants counter without citation that this rule only applies to the termination of civil cases and not to the termination of a criminal prosecution. R. Doc. No. 43, at 9. The Court finds this argument unsupported.

### b.    Absolute Immunity

The Court has already held that Holmes's claims related to the allegedly false minute entry are time-barred. However, even assuming *arguendo* that those claims are not time-barred (they are), they are nevertheless foreclosed by the doctrine of absolute immunity. Additionally, Holmes's claims pertaining to the alleged redactions of materials during his criminal proceeding, alleged false affidavit, alleged conspiracy to threaten to reinstate criminal charges against him, and alleged defamatory statements in defendants' state-court appellate brief are also barred by absolute immunity.

### *i. Federal Claims*

Defendants argue that Holmes's federal claims against them in their individual capacities are barred by the doctrine of absolute immunity pursuant to *Imbler v. Pachtman*, 424 U.S. 409 (1976).[62] In *Imbler*, the U.S. Supreme Court held that a state prosecutor whose "activities [are] intimately associated with the judicial phase of the criminal process" is absolutely immune from a civil lawsuit pursuant to § 1983. *Imbler*, 424 U.S. at 410, 427, 430.

Absolute immunity "is analyzed under the 'functional approach.'" *Wearry v. Foster*, 33 F.4th 260, 265 (5th Cir. 2022) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)). "This approach looks first to 'the immunity historically accorded the relevant official at common law' and then identifies the 'functions' of that historical official whose contemporary analogues should be afforded the same immunity." *Id.*

---

[62] R. Doc. No. 36-1, at 11–19.

Absolute immunity therefore applies when a prosecutor is acting as "an officer of the court," but not when the prosecutor "is instead engaged in . . . investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009). Defendants "bear[] the burden of proving that the conduct at issue served a prosecutorial function." *Wearry v. Foster*, 33 F.4th 260, 269 (5th Cir. 2022) (quoting *Hoog-Watson v. Guadalupe Cty., Tex.*, 591 F.3d 431, 437 n.6 (5th Cir. 2009)).

Importantly, "absolute immunity is justified and defined by the governmental functions it protects and serves, not by the motives with which a particular officer performs those functions." *Brummett v. Camble*, 945 F.2d 1178, 1181 (5th Cir. 1991). "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Imbler*, 424 U.S. at 427.

It has been "established that the decisions to charge, not to charge, or to dismiss charges are all plainly within the ambit of the 'judicial phase of the criminal process[.]'" *Jason v. Par. of Plaquemines*, No. 16-2728, 2017 WL 993152, at *4 (E.D. La. Mar. 15, 2017) (Vance, J.) (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) and citing *Imbler*, 424 U.S. at 431 n.33). Likewise, "a plea negotiation—in which charging, sentencing, and other purely prosecutorial decisions are bargained for—is quintessentially advocatory in function." *Wearry*, 33 F.4th at 269–270.

Applying this functional approach, defendants have established that they are absolutely immune from Holmes's claims stemming from their decision to charge

Holmes, their eventual dismissal of the charges against him, and their conduct during plea negotiations. Counts 29 through 37 of Holmes's amended complaint make various allegations about defendants' decision to charge Holmes with one count of resisting an officer.[63] Holmes alleges that the "sole purpose" of filing this charge was to "extract or coerce an agreement by [Holmes] to forego filing a civil claim against Sheriff [Turlich] and the [S]heriff's deputies."[64] These allegations are foreclosed by defendants' absolute immunity. *See Imbler*, 424 U.S. at 431 (holding that "in initiating a prosecution . . . , the prosecutor is immune from a civil suit for damages under § 1983"); *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987) (holding that prosecutors enjoyed absolute immunity for acts taken to initiate prosecution where the plaintiff alleged that the prosecutors had authorized a warrant for his arrest on charges of interstate flight without probable cause and the charges were later dropped).[65]

Defendants are also absolutely immune from Holmes's claims relating to their plea negotiations with Holmes. Counts 38 through 41 of Holmes's amended complaint allege that, during plea negotiations, defendants offered to dismiss the charge against

---

[63] R. Doc. No. 23, ¶¶ 29–37.

[64] *Id.* ¶ 37.

[65] Holmes's argument that "prosecutors who overstep the boundaries of their authority are not immune" is incorrect. To the contrary, "[a] prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, *or was in excess of his authority*; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Kerr v. Lyford*, 171 F.3d 330, 337 & n.10 (5th Cir. 1999) (emphasis added), *abrogated in part on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003); *Champluvier v. Couch*, 309 F. App'x 902, 903 (5th Cir. 2009). Holmes has not alleged that defendants acted in the clear absence of jurisdiction in filing the charge against him.

him, but only if he would agree to an informal diversion program.[66] As stated, plea negotiations are "quintessentially advocatory in function[,]" so absolute immunity applies. *Wearry*, 33 F.4th at 269–270; *see also McGruder v. Necaise*, 733 F.2d 1146 (5th Cir. 1984) (holding that prosecutors who allegedly offered to drop all criminal charges against the plaintiff if he would agree to dismiss a separate civil damages suit against various officials were absolutely immune); *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (holding that a prosecutor's demand that the plaintiffs in that case "execute releases in favor of the policemen and the municipalities" in exchange for the decision to forgo prosecution was subject to absolute immunity).

Likewise, defendants are absolutely immune from Holmes's claims relating to the September 23, 2019 minute entry. As noted, the minute entry states: "On motion of the State, this matter is dismissed. Completed informal diversionary program."[67] Counts 42 through 45 of Holmes's amended complaint allege that, "in dictat[ing] the false minute entry outside of open court, defendants [] circumvented the oversight of the courts by ignoring the requirements of the Louisiana Code of Criminal Procedure."[68]

However, as stated, dismissing charges against a criminal defendant falls "plainly within the ambit of the 'judicial phase of the criminal process[.]'" *Jason*, 2017 WL 993152, at *4 (quoting *Van de Kamp*, 555 U.S. at 341 and citing *Imbler*, 424 U.S. at 431 n.33). The prosecutor's actions at issue here—dismissing criminal charges—

---

[66] R. Doc. No. 23, ¶¶ 38–41.
[67] *Id.* ¶ 42.
[68] *Id.* ¶¶ 42–45.

"involve the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" *Burns v. Reed*, 500 U.S. 478, 491–92 (1991). "[A]bsolute immunity for this function serves the policy of protecting the judicial process, which underlies much of the [Supreme] Court's decision in *Imbler*." *Id.* at 492.

Holmes argues "that defendants did not merely dismiss the criminal charge against [him,]" but rather "attempt[ed] to add, falsely, that [Holmes] had agreed to an 'informal diversion'" with the "sole intent and purpose [of] manufactur[ing] an advantage for the Sheriff and deputies."[69] However, applying the functional approach, the question is whether defendants were functioning as advocates in dismissing the charges against Holmes, not whether they made false statements in doing so or whether they had nefarious intentions. *Cf. e.g.*, *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994) (explaining that absolute immunity applies to a prosecutor's actions in "initiating the prosecution and carrying the case through the judicial process even if the prosecutor is accused of knowingly using perjured testimony"); *Cousin v. Small*, 325 F.3d 627, 632, 636–37 (5th Cir. 2003) (rejecting an "egregiousness" exception to absolute immunity and finding that prosecutors' unlawful and improper detention of witnesses to prevent them from testifying in criminal proceedings was shielded by absolute immunity because the prosecutors undertook the detention of the witnesses pursuant to their role as advocates); *see also Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991) (explaining that "absolute

---

[69] R. Doc. No. 39, at 6.

immunity is justified and defined by the governmental functions it protects and serves, not by the motives with which a particular officer performs those functions").

Likewise, Holmes's allegations that defendants "and/or Turlich unlawfully redacted materials in order to obscure the possible identification of potential witnesses" in producing Turlich's materials to Holmes's criminal attorney[70] are barred by absolute immunity. Even where a prosecutor allegedly maliciously suppresses exculpatory information, that prosecutor's conduct is shielded by absolute immunity. *E.g.*, *Cousin*, 325 F.3d at 635 ("[T]he suppression of exculpatory evidence is shielded by absolute immunity."). Accordingly, defendants' alleged conduct in withholding potential witnesses from Holmes's criminal defense attorney is subject to absolute immunity.

Holmes's allegations regarding a false affidavit produced during the course of Holmes's criminal case are similarly barred by absolute immunity. Holmes's complaint alleges that defendants "produced a false affidavit by [White] asserting that he had reached an agreement for a 'diversion' with [Holmes] and his attorney[.]"[71] Holmes asserts that he never agreed to any form of diversion.[72] He also alleges that, "[a]t the hearings on the motion to correct and the motion to quash, [Ballay] referred to [White's] affidavit but refused to produce it to [Holmes's] attorney."[73]

---

[70] R. Doc. No. 23, ¶ 63.
[71] *Id.* ¶ 53.
[72] *Id.*
[73] *Id.*

Producing such an affidavit in the course of a criminal case (and discussing it during two hearings in court) in support of the state's position that Holmes's criminal case had been dismissed pursuant to an agreement is conduct "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430; *see also Bruce v. Wade*, 537 F.2d 850, 852 (5th Cir. 1976) (affirming dismissal of a plaintiff's § 1983 claims against a prosecutor where the plaintiff alleged that the prosecutor suborned perjury and filed false affidavits both at his trial and during subsequent habeas proceedings based on absolute immunity). And, as discussed, a prosecutor's failure to produce evidence to a defendant's counsel is covered by absolute immunity even where the prosecutor acted maliciously. *E.g., Cousin*, 325 F.3d at 635.

Holmes argues that defendants' actions in asserting that Holmes had agreed to informal diversion constituted "an attempt to obtain a collateral advantage[,]" namely, a ruling that Holmes's civil claims against Turlich were *Heck*-barred.[74] Holmes also argues that this false assertion "fell outside of any legitimate advocacy function" and that defendants "circumvented the rules requiring oversight of the court in order to make the false representation."[75]

As already noted, defendants' purportedly conniving intentions are beside the point. *See Brummett*, 946 F.2d at 1181 (explaining that "absolute immunity is justified and defined by the governmental functions it protects and serves, not by the motives with which a particular officer performs those functions"). Holmes's

---

[74] R. Doc. No. 39, at 7.
[75] *Id.* at 6–7.

arguments are somewhat reminiscent of *Singleton v. Cannizzaro*, a case in which the Fifth Circuit held that absolute immunity did not extend to prosecutors who created and used fake subpoenas to attempt to pressure crime victims and witnesses to meet with them privately and share information outside the court. 956 F.3d at 783–84. Unlike the defendants in *Singleton*, however, defendants did not operate outside the judicial process. Holmes's allegations pertain to conduct intimately associated with the judicial phase of the criminal process because they involve the presentation of evidence and arguments regarding the dismissal of the charges to the court.

Holmes's complaint also alleges that defendants "conspir[ed]" with Turlich's attorney during the course of Holmes's civil trial "to deprive [Holmes] of his constitutional rights."[76] Specifically, Holmes alleges that Turlich's attorney "threatened" Holmes that defendants would reinstate the criminal charges against him.[77] As to defendants, these allegations pertain to the decision to reinstate criminal charges, which, like the decision to bring criminal charges in the first place, is "intimately associated with the judicial phase of the criminal proceeding." *Imbler*, 424 U.S. at 430.

---

[76] R. Doc. No. 23, ¶ 61. The Court notes that, to state a cause of action for a conspiracy between a private citizen and state actors pursuant to § 1983, a plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights." *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004) (citing *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994)). "Allegations that are merely conclusory, without reference to specific facts, will not suffice. *Id.* (citing *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986)). Because defendants have successfully argued that any conspiracy claim against them should be dismissed based on prescription and absolute immunity, the Court need not decide whether Holmes's complaint has satisfied this standard with respect to defendants.
[77] *Id.*

Accordingly, the Court will dismiss Holmes's federal claims against defendants in their individual capacities. *See Singleton*, 956 F.3d at 778 n.3 ("Absolute . . . immunity protect[s] only individuals from claims for damages; [it] does not bar official-capacity claims[.]").

### ii. State-Law Claims

Defendants also argue that Holmes's state-law tort claims are foreclosed by absolute prosecutorial immunity pursuant to *Knapper v. Connick*, 681 So. 2d 944 (La. 1996).[78] "Adopting the rationale from *Imbler*, the Louisiana Supreme Court in *Knapper v. Connick* established that Louisiana district attorneys and their assistants are absolutely immune from civil liability arising from actions taken within the scope of their prosecutorial duties." *Jason*, 2017 WL 993152, at *7 (citing *Knapper*, 681 So. 2d at 950–51). In other words, "Louisiana law tracks federal law on absolute prosecutorial immunity." *Singleton*, 956 F.3d at 779 n.4 (citing *Knapper*, 681 So. 2d at 947, 950).

The Louisiana Supreme Court recently "reaffirm[ed] [its] holding in *Knapper* and reiterate[d] that, where a prosecutor acts within the scope of his prosecutorial duties as an advocate for the state and the alleged misconduct arises from 'conduct intimately associated with the judicial phase of the criminal process,' he is entitled to absolute immunity." *Jameson v. Montgomery*, 366 So. 3d 1210, 1219 (La. 2023) (quoting *Knapper*, 681 So. 2d at 951). "This absolute immunity applies even where a prosecutor's conduct is intentional or malicious." *Id.* at 1218.

---

[78] R. Doc. No. 36-1, at 17–19.

Accordingly, Holmes's complaint fails to state a claim against defendants for state-law torts, including intentional infliction of emotional distress, defamation, fraud, and abuse of process to the extent these claims arise from defendants' alleged decision to prosecute Holmes, conduct during plea negotiations, dismissal of the charges through the minute entry, redactions of materials to obscure the identity of potential witnesses, production of a false affidavit, and conspiracy involving the threat of reinstating criminal charges against Holmes. As discussed in the previous section, these functions are intimately associated with the judicial phase of the criminal process," and defendants are entitled to absolute immunity in carrying them out as advocates for the state. *Jameson*, 366 So. 3d at 219 (quoting *Knapper*, 681 So. 2d at 951).

To the extent Holmes's state-law claims—including his defamation claim—arise from allegedly false statements made in the state's brief appealing the state district court's grant of Holmes's motion to quash the bill of information against him, these allegations also fail to state a claim based on absolute immunity.[79] Holmes primarily argues that Ballay "gratuitously adopted in the State's legal pleadings the false narrative of the Sheriff and deputies depicting [Holmes] as a threat to the safe[ty] of others and a sexual predator."[80] According to Holmes, the brief's allusion to allegations that Holmes was a suspect in a prior sex crime reported by his former spouse "gratuitously smear[ed] Holmes's reputation[.]"[81]

---

[79] *See* R. Doc. No. 23, ¶¶ 54–60.
[80] *Id.* ¶ 54.
[81] *Id.* ¶ 60.

Drafting and filing an appellate brief are prosecutorial functions protected by absolute immunity. *See, e.g.*, *Wilson v. Barcella*, No. 05-3646, 2007 WL 96397, at *24 (S.D. Tex. Mar. 29, 2007) ("Decisions as to what to include in an appellate brief are within the advocatory role."). Further, courts routinely hold that defamation claims based on prosecutors' statements made during judicial proceedings in the prosecutor's role as an advocate for the state are barred by absolute immunity. *See Marrero v. City of Hialeah*, 625 F.2d 499, 506 (5th Cir. 1980) (referencing "the well established doctrine affording prosecutors absolute immunity from suits for defamatory remarks made during a judicial proceeding" (citing *Imbler*, 424 U.S. at 426 n.23; *id.* at 439 (White, J. concurring))).[82] Accordingly, Holmes's state-law claims based on what was written in state's appellate brief, including any defamation claim, fail as a matter of law based on absolute immunity.

As explained, all of Holmes's individual-capacity claims against defendants—both federal claims and state claims—are barred by absolute immunity. The Court acknowledges Holmes's argument about the importance of "consequences" for "those

---

[82] *See also Burns v. Reed*, 500 U.S. 478, 489–90 (1991) (explaining that prosecutors were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings as long as the statements were related to the proceeding); *Knapper*, 681 So. 2d at 950 (agreeing with the federal approach extending absolute immunity to actions taken "within the course and scope of a prosecutor's traditional duties"); *Gauthier v. Ard*, No. 2018 CA 0861, 2019 WL 3311965, at *1–3 (La. App. 1st Cir. July 23, 2019) (affirming dismissal of a plaintiff's defamation claim against a prosecutor based on absolute immunity where the plaintiff alleged that the prosecutor had falsely alleged purported criminal misconduct and later "unilaterally dismissed" the charges because the prosecutor's alleged actions fell "within the prosecutorial duties that are intimately associated with the judicial phase of the criminal process and [] occur[red] in the course of a prosecutor's role as an advocate for the state").

in power."[83] The Supreme Court has recognized that the doctrine of absolute immunity will sometimes "leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427. Nevertheless, "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Id.*

### c.   Claims Against Ballay in his Official Capacity

The Court next addresses defendants' contentions that the complaint fails to state a § 1983 claim against them in their official capacities.[84] The Court has already explained that Holmes's claims relating to the alleged false minute entry are time-barred, including Holmes's official-capacity claims.

The Court notes that Holmes's complaint does not appear to name White in his official capacity.[85] However, defendants' motion to dismiss suggests that White was named in his individual and official capacities[86] and defendants' reply suggests both that White was sued "individually and in his alleged official capacity as assistant district attorney" and that he was sued "in his official capacity only."[87]

Defendants first argue that Holmes's claims against them in their official capacities are barred by the Eleventh Amendment.[88] Defendants also assert that Holmes's complaint fails to state a *Monell* claim against them. 436 U.S. at 694.[89]

---

[83] R. Doc. No. 39, at 7.
[84] R. Doc. No. 36-1, at 21–25.
[85] R. Doc. No. 23, ¶¶ 5, 94.
[86] R. Doc. No. 36, at 1.
[87] R. Doc. No. 43, at 1.
[88] *Id.* at 21 (adopting argument made in R. Doc. No. 10-1, at 9–14).
[89] *Id.* at 22–25.

Holmes does not respond to these arguments in his instant opposition, though his first opposition argues that defendants were acting as local officials and not on behalf of the state.[90]

### i. Eleventh Amendment

As other sections of this Court have held, defendants' Eleventh Amendment argument "has been foreclosed by the Fifth Circuit." *Jason*, 2017 WL 993152, at *4. The Fifth Circuit specifically addressed whether the Eleventh Amendment bars § 1983 lawsuits against Louisiana district attorneys in their official capacities in *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999). "The *Hudson* court applied the six-factor test from *Clark v. Tarrant County, Texas*, 798 F.2d 736, 744 (5th Cir. 1986), and found that Louisiana district attorney offices (and therefore the district attorneys in their official capacities) were not protected by the Eleventh Amendment." *Jason*, 2017 WL 993152, at *4. Accordingly, this argument is meritless.

### ii. Monell

However, defendants are correct that Holmes's complaint fails to state a plausible *Monell* claim against them pursuant to Rule 12(b)(6). "A suit against a government officer 'in his official capacity' is the same as a suit against the government entity of which he is an agent." *Jason*, 2017 WL 993152, at *5 (citing *Burge v. Par. of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999)). "Section 1983 offers no *respondeat superior* liability." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). However, municipalities like Plaquemines Parish "face § 1983 liability

---

[90] R. Doc. No. 16, 5–6.

'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . .'" *Id.* (quoting *Monell*, 436 U.S. at 694).

"Section 1983 municipal liability requires proof of three elements: (1) a policymaker, (2) an official policy or custom, and (3) a violation of constitutional rights whose 'moving force' is that policy or custom." *Jason*, 2017 WL 993152, at *5 (citing *Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009)). "Thus, a plaintiff seeking to impose liability on a municipality under section 1983 must 'identify a municipal policy or custom that caused the plaintiff's injury.'" *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403–04 (1997)).

As mentioned, Holmes's amended complaint—unlike his original complaint—does not appear to name White in his official capacity. In any event, to the extent Holmes did intend to sue White in his official capacity, defendants are correct that any official-capacity claims against White would need to be dismissed based on the "policymaker" element.[91] As an assistant district attorney, White did not have final policymaking authority and therefore would "not [be] the proper defendant for an official capacity claim against the District Attorney's Office." *Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006).[92]

Additionally, Holmes's complaint fails to state a *Monell* claim against Ballay in his official capacity as Plaquemines Parish district attorney. As explained,

---

[91] R. Doc. No. 36-1, at 21–22.

[92] In any event, as discussed, Holmes's claims against White regarding the alleged false minute entry are prescribed.

municipal liability requires proof of an "official policy or custom" as the second element. *Jason*, 2017 WL 993152, at *5. "The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Houston*, 613 F.3d 535, 542 (5th Cir. 2010) (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)).

Holmes's complaint alleges that defendants made "unilateral dismissal via uncorroborated 'diversion' agreements outside of open court" a "routine practice" and "custom."[93] Holmes alleges that defendants themselves identified thirteen cases in which they "ma[de] citizens' civil rights disappear" through this dismissal process.[94] The complaint does not provide any additional details regarding these thirteen cases. However, as previously discussed, Holmes's claims related to the dismissal of the minute entry are time-barred. And Holmes's complaint does not appear to assert that there was any official policy or custom with respect to any of his other allegations. Accordingly, Holmes's *Monell* claims fail.[95]

### d.    Leave to Amend

Holmes also argues that, "[i]f any deficiency in the [c]omplaint exists," he "is

---

[93] R. Doc. No. 23, ¶ 51.

[94] *Id.*

[95] Because the Court finds that Holmes's official-capacity claims must be dismissed either based on prescription or based on the failure to allege an official policy or custom, it need not address defendants' arguments that defendants acted on behalf of the State of Louisiana rather than on behalf of a municipality. *See* R. Doc. No. 36-1, at 23.

entitled at this early stage to amend the complaint to cure it."[96] Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Although Rule 15 "evinces a bias in favor of granting leave to amend," it is not automatic. *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *United States ex rel. Lin v. Mayfield*, 773 F. App'x 789, 790 (5th Cir. 2019) (quotations omitted). A decision to grant leave to amend is within the discretion of the trial court. *Mayfield*, 773 F. App'x at 790.

However, a "district court must possess a 'substantial reason' to deny a request for leave to amend." *Id.* (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)). The "futility of the amendment" is one such reason. *Id.* "[A]n amended complaint is futile 'if the complaint as amended would be subject to dismissal.'" *Rohi v. Brewer (In re ABC Dentistry, P.A.)*, 978 F.3d 323, 325 (5th Cir. 2020) (quoting *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014)). Futility is evaluated "under the same standards as a dismissal under Rule 12(b)(6)." *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 437 (5th Cir. 2021) (citing *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).

The Court has already permitted Holmes to amend his complaint in response to defendants' first motion to dismiss.[97] Holmes does not explain how he might amend his complaint to assert claims against defendants that would avoid the prescription,

---

[96] R. Doc. No. 39, at 9.
[97] *See* R. Doc. No. 20.

immunity, and *Monell* issues described throughout this order and reasons. Accordingly, the Court finds that permitting Holmes to amend his complaint again would be futile.

### IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Ballay and White's motion to dismiss Holmes's claims against them is **GRANTED**. Holmes's claims against Ballay and White are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, February 22, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**