## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL R. HOLMES**                                    **CIVIL ACTION**

**VERSUS**                                                          **No. 23-1247**

**ROBERT M. WHITE ET AL.**                          **SECTION I**

### ORDER & REASONS

Before the Court are *pro se* plaintiff Michael R. Holmes's ("Holmes") motions[1] to vacate the order,[2] dated May 28, 2024, granting defendants Daniel R. Martiny's ("Martiny") and Sheriff Gerald A. Turlich, Jr.'s ("Turlich") (collectively, "defendants") motion for summary judgement in part and denying it in part. Defendants filed a response opposing the motion.[3] The Court construes Holmes's motions to vacate as motions to alter or amend the judgment pursuant to Rule 59(e).

For the reasons below, the Court grants Holmes's motions in part and denies them in part. The Court grants the motions and vacates the portion of its May 28, 2024 order holding that Holmes's defamation claim is time-barred. However, the Court fully considers the arguments raised in defendants' motion for summary judgment and in Holmes' response that were not reached in the May 28, 2024 order. The Court thereby grants defendants' motion for summary judgment with respect to Holmes's defamation claim on alternative reasoning not previously reached. The Court denies Holmes's motions in all other respects.

---

[1] R. Doc. No. 63 (motion to vacate); R. Doc. No. 73 (re-urged motion to vacate).
[2] R. Doc. No. 59.
[3] R. Doc. No. 65.

# I.    BACKGROUND

## a.    Factual Background

This lawsuit arises from a September 23, 2018 incident in which Holmes alleges he was "unreasonably detained, assaulted and battered, and unlawfully arrested by deputies of the Plaquemines Parish Sheriff's Office" after he was seen taking photographs of a carnival amusement ride at a Catholic school's fair event.[4] This is Holmes's second federal lawsuit relating to this incident.

In *Holmes v. Reddoch*, Holmes's first lawsuit, Holmes filed a complaint[5] asserting claims pursuant to 42 U.S.C. § 1983. Among other claims, Holmes asserted that the defendants violated his Fourth Amendment rights by unreasonably stopping him, arresting him without probable cause, falsely imprisoning him for resisting an officer, and unreasonably searching him and his property.[6] In a motion[7] for summary judgment, the defendants produced a minute entry from Holmes's state criminal case related to this incident, stating: "On motion of the State, this matter is dismissed. Completed informal diversionary program."[8]

Based on this evidence, the Court granted[9] summary judgment in favor of the defendants because the Court concluded that many of Holmes's § 1983 claims were

---

[4] R. Doc. No. 23, ¶ 10.
[5] E.D. La. Case No. 19-12749, R. Doc. No. 1.
[6] E.D. La. Case No. 19-12749, R. Doc. No. 52, at 3–6 (memorandum delineating claims).
[7] E.D. La. Case No. 19-12749, R. Doc. No. 68.
[8] E.D. La. Case No. 19-12749, R. Doc. No. 68-5.
[9] E.D. La. Case No. 19-12749, R. Doc. No. 97, at 14.

barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).[10] Holmes filed his first appeal.[11] In that appeal, Holmes disputed that he ever agreed to a diversionary program and argued that there were genuine disputes of material fact regarding whether he did so—making summary judgment based on a *Heck* bar inappropriate.[12] The Fifth Circuit agreed.[13] It thereby vacated this Court's judgment and remanded the matter for further proceedings consistent with that determination.[14]

Following remand, this Court held a three-day jury trial.[15] On May 17, 2023, the jury found Sheriff's Deputy Corbett Reddoch ("Reddoch") liable to Holmes for Fourth Amendment violations, state-law battery, state-law false arrest or imprisonment, and state-law malicious prosecution.[16] Martiny represented Reddoch and other defendants, including Turlich, in that litigation.[17] Following the jury verdict, this Court entered judgment in Holmes's favor.[18] The defendants appealed that judgment,[19] arguing that they were entitled to judgment as a matter of law and that the judgment was irreconcilably inconsistent.[20] The U.S. Court of Appeals for

---

[10] *Id.* at 18–25. *Heck* bars the litigation of a § 1983 claim if success on that claim "would necessarily imply that a prior conviction or sentence is invalid." *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020) (citing *Heck*, 512 U.S. at 486–87).

[11] E.D. La. Case No. 19-12749, R. Doc. No. 99 (notice of appeal).

[12] 5th Cir. Case No. 21-30164, R. Doc. No. 15-1, 17, 19–21.

[13] 5th Cir. Case No. 21-30164, R. Doc. No. 57-1, at 3.

[14] *Id.* at 4.

[15] E.D. La. Case No. 19-12749, R. Doc. No. 205 (minute entry for jury trial).

[16] *Id.*

[17] *See generally* E.D. La. Case No. 19-12749 (docket sheet).

[18] E.D. La. Case No. 19-12749, R. Doc. No. 230 (judgment).

[19] E.D. La. Case No. 19-12749, R. Doc. No. 231 (notice of appeal).

[20] 5th Cir. Case No. 23-30424, R. Doc. No. 41, at 25–26.

the Fifth Circuit recently affirmed this Court's judgment in Holmes's first civil case on September 6, 2024.[21]

Holmes's amended complaint in the present lawsuit contains several claims pursuant to 42 U.S.C. § 1983, alleging violations of his First, Fourth, and Fifth Amendment rights, as well as several state-law claims.[22] In an April 30, 2024 status conference, Holmes narrowed his claims and informed the Court that his remaining claims against defendants were "(1) a federal § 1983 claim for conspiring with the District Attorney's Office to prevent [Holmes's] earlier § 1983 claim from going forward by 'manufacturing a *Heck* bar' and threatening him with state criminal charges; and (2) various state-law claims against defendants, including defamation and malicious prosecution claims."[23]

Relevant to Holmes's conspiracy claim, Holmes's amended complaint alleges that Martiny, acting as Turlich's agent, conspired with Charles Ballay ("Ballay"), district attorney of Plaquemines Parish, and Robert White ("White"), assistant district attorney, to deprive Holmes of his constitutional rights.[24] As part of this conspiracy, Holmes asserts that these individuals falsified the minute entry in his criminal case and threatened him with reinstatement of criminal charges if he did not drop his civil case against them.[25] Holmes states that this was an attempt to

---

[21] 5th Cir. Case No. 23-30424, R. Doc. No. 76.
[22] R. Doc. No. 23, ¶¶ 69–72, 75–79.
[23] R. Doc. No. 53, at 1.
[24] R. Doc. No. 23, ¶¶ 61, 67.
[25] *Id.* ¶¶ 42–44, 61.

manufacture a *Heck* bar to his § 1983 claims and protect the sheriff and his deputies from liability.[26] Holmes also asserts a claim of malicious prosecution based on the actions taken in the alleged conspiracy.[27] Ballay and White have since been dismissed from this case.[28]

Relevant to Holmes's state-law defamation claim, Holmes alleges that Martiny, while acting as Turlich's agent, defamed Holmes by falsely portraying him "as a person who was a threat to the safety of others, and a sexual predator," including by arguing in a brief to the Fifth Circuit that Holmes's conduct satisfied the elements of the crime of video voyeurism.[29] He further states that Turlich "continues to defame [Holmes] . . . in recent postings on social media and other statements regarding the civil litigation, falsely portraying [Holmes] as a threat to the safety of children and other citizens."[30]

### b.      Plaintiff's Rule 59(e) Motions

Relevant to the present motions, the Court held a status conference with counsel for both parties participating on April 30, 2024.[31] During this conference, the Court granted defendants leave to file a motion for summary judgement and set a briefing schedule for those motions.[32]

---

[26] *Id.* ¶ 44.
[27] *Id.* ¶¶ 46, 48, 60–61, 71–72.
[28] R. Doc. No. 44.
[29] *Id.* ¶¶ 65–66.
[30] *Id.* ¶ 68.
[31] R. Doc. No. 53 (minute entry following status conference).
[32] *Id.* at 2.

In their motion for summary judgment, defendants argued that Holmes's § 1983 claim is prescribed, that Holmes's § 1983 claim against Turlich in his official capacity fails as a matter of law, that Holmes's state-law claims of defamation and malicious prosecution are prescribed, and that Holmes's state-law defamation claim fails as a matter of law.[33] The certificate of service stated that a copy of the motion had been served "upon all counsel of record via electronic filing."[34] Holmes did not file a response to this motion by the deadline.

The Court issued an order[35] on May 28, 2024, granting defendants' motion for summary judgement in part and denying it without prejudice in part based on its assessment of the record and the arguments raised in defendants' motion. The Court held that Holmes's § 1983 claim, to the extent that it related to the allegedly falsified minute entry and the manufacturing of a *Heck* bar, was time-barred as well as the state-law claims that overlapped with the federal claim.[36] But the Court declined to conclude that Holmes's civil-rights conspiracy claim and state-law claims related to conduct which occurred during the course of litigation in *Holmes v. Reddoch*[37] were time-barred because the complaint did not state the dates on which the relevant conduct occurred, and defendants did not carry their burden to prove that claims related to that conduct were time-barred.[38] To the extent that Holmes's § 1983 claim

---

[33] R. Doc. No. 54-1, at 9–17.

[34] *Id.* at 18.

[35] R. Doc. No. 59.

[36] *Id.* at 11–12.

[37] E.D. La. Case No. 19-12749.

[38] R. Doc. No. 59, at 11–12.

6

is analogous to a malicious prosecution claim, the Court held that it was also time-barred.[39] The Court determined that Holmes's defamation claim was either time-barred or premature considering the then-pending appeal filed in the Fifth Circuit.[40] Finally, the Court concluded that Holmes's lawsuit against Turlich in his official capacity failed as a matter of law because nothing in Holmes's amended complaint suggested that there was an official policy or custom as required for claims brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[41]

On June 24, 2024, Holmes filed a motion[42] to vacate the Court's May 28, 2024 order, asserting that Holmes had never been served with defendants' motion and that he was therefore not given an adequate opportunity to respond.[43] On July 12, 2024, having concluded that Holmes had not been properly served, the Court ordered[44] defendants to properly serve Holmes with their motion for summary judgment on or before July 19, 2024.[45] The Court gave Holmes an opportunity to respond to defendants' motion for summary judgment and ordered any response to be received in chambers by July 29, 2024.[46] The Court stated that it would fully consider the motion to vacate after receiving said response.[47]

---

[39] *Id.* 10–11.
[40] *Id.* at 12–13 & n.57; *see also* 5th Cir. Case No. 23-30424.
[41] *Id.* at 13–15.
[42] R. Doc. No. 63.
[43] R. Doc. No. 63-1, at 1–2.
[44] R. Doc. No. 69.
[45] *Id.* at 8.
[46] *Id.*
[47] *Id.*

On July 26, 2024, Holmes filed a motion[48] for an extension of time to respond to defendants' motion for summary judgment. The motion detailed family obligations as the reason for the requested extension but did not state that Holmes had not been served with defendants' motion for summary judgment.[49] The Court granted the motion in part and ordered Holmes to file his response by August 12, 2024.[50]

On August 12, 2024, the Court received a motion[51] from Holmes re-urging his request that the Court vacate its May 28, 2024 order. In the motion, Holmes stated that he had still not been served with defendants' motion for summary judgment.[52] At the Court's urging, the Court and the parties had a telephone conference on August 13, 2024.[53] The Court inquired whether defendants had served Holmes with their motion.[54] Defendants advised the Court that they had done so by email.[55] Holmes acknowledged that he had received the motion by email, but he objected to such service as it failed to comply with Federal Rule of Civil Procedure 5(b) because he had not consented in writing to be served via email.[56] The Court therefore ordered defendants to deliver their motion for summary judgment to Holmes's address by August 16, 2024, and it ordered Holmes to file his response by August 23, 2024.[57]

---

[48] R. Doc. No. 71.
[49] *Id.* at 1–2.
[50] R. Doc. No. 72.
[51] R. Doc. No. 73.
[52] R. Doc. No. 73-1, at 1.
[53] R. Doc. No. 74.
[54] *Id.* at 3.
[55] *Id.*
[56] *Id.*
[57] *Id.* at 3–4.

Holmes filed his response on August 23, 2024.[58] In his response, Holmes argues that none of his claims are prescribed pursuant to Louisiana's doctrine of *contra non valentum*.[59] Holmes also argues that his state-law defamation claims are not prescribed because defendants have continued their pattern of defamation since the *Holmes v. Reddoch* trial and its appeal.[60] In regard to his claim against Turlich in his official capacity, Holmes argues that Turlich is the entity of the sheriff "in and of himself" and that "his edicts or acts may fairly be said to represent official policy of his office."[61] Lastly, Holmes argues that summary judgment is premature because the parties have yet to complete discovery.[62]

## II.   STANDARD OF LAW

The Federal Rules of Civil Procedure do not expressly recognize motions for reconsideration. *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000). However, "such motions may properly be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment." *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). While a "Rule 60(b) motion does not toll the running of time for filing a notice of appeal[,] . . . a timely filed Rule 59(e) motion does." *Id.*

---

[58] R. Doc. No. 75.
[59] *Id.* at 6.
[60] *Id.*
[61] *Id.* at 6–7.
[62] *Id.* at 10–11.

9

However, to avoid confusion over whether the appellate courts have jurisdiction to entertain an appeal pursuant to Federal Rule of Appellate Procedure 4(a)(4), the Fifth Circuit has clarified that motions to alter or amend a judgment that are filed within twenty-eight[63] days after the entry of the judgment and are not to correct clerical errors "must, however designated by the movant, be considered as a Rule 59(e) motion." *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 667 (5th Cir. 1986); *see also Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 327 n.1 (5th Cir. 2004) (restating this holding). Motions that are untimely under Rule 59(e) must be considered pursuant to Rule 60(b). *Shepherd*, 372 F.3d at 327 n.1. Plaintiff filed his first motion within twenty-eight days of the Court's order.[64] Accordingly, a Rule 59(e) analysis is appropriate.

A motion pursuant to Rule 59(e) "calls into question the correctness of a judgment." *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 328 (5th Cir. 2017) (citations omitted). "Rule 59(e) has been interpreted as covering motions to vacate judgments, not just motions to modify or amend." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). Courts have also applied Rule 59(e) to motions to alter or amend where no final judgment was issued in the case. *See, e.g.*,

---

[63] The authority cited herein states that the rule applies to motions filed within ten days, reflecting the timeliness requirement for Rule 59(e) motions that existed at the time. *See Harcon Barge Co.*, 784 F.2d at 667. The rule has since been amended to give parties twenty-eight days to file the motion. *See* Fed. R. Civ. P. 59(e).

[64] The Court issued its order granting defendants' motion for summary judgment in part and denying it in part on May 28, 2024. R. Doc. No. 59. Holmes filed his first motion for reconsideration on June 24, 2024, R. Doc. No. 63, which is twenty-seven days after the Court's order.

*Mandawala v. Baptist Sch. of Health Pros.*, No. 23-50258, 2024 WL 1461943, at \*2 (5th Cir. Apr. 4, 2024) (affirming the district court's denial of a to reconsider a partial grant of summary judgment wherein the court applied Rule 59(e)).

"Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Thus, "[a] motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 128 (5th Cir. 2019). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 226 (5th Cir. 2018).

District courts have broad discretion to decide whether to reopen a matter in response to a motion for reconsideration. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990). However, such discretion is not limitless. *Id.* A court must consider the dual needs of finality and "the need to render just decisions on the basis of all the facts." *Id.*

Holmes stated reason for asking this Court to vacate its May 28, 2024 order is that he was not given an opportunity to respond to defendants' motion for summary

11

judgment before the Court issued its order.[65] Holmes has since had a chance to respond.[66] Though Holmes labels his motions as motions to vacate, the Court construes Holmes's motions as Rule 59(e) motions to alter or amend a judgment.[67]

## III.   ANALYSIS

### a.   Time-Bars

#### i.   *Federal Claims*

During an April 30, 2024 status conference with the Court, Holmes clarified that his only remaining federal claim is a § 1983 claim for conspiring with the district attorney's office to prevent his earlier § 1983 claims in *Holmes v. Reddoch* from going forward by manufacturing a *Heck* bar and threatening him with state criminal charges.[68]

In the Court's May 28, 2024 order, the Court held Holmes's § 1983 claim is time-barred to the extent that it relies on the entry of the allegedly falsified minute entry as an "overt act" in the alleged civil-rights conspiracy against him.[69] The Court had previously held that any § 1983 claim related to the minute entry accrued at least as early as September 28, 2021 because, on that date, Holmes filed a supplemental memorandum in support of his state-court motion to correct the minute entry in

---

[65] R. Doc. No. 63-1, at 2; R. Doc. No. 73.
[66] R. Doc. No. 75.
[67] The Court construes these filings liberally as they were filed *pro se. See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). Still, the Court notes that Holmes is an attorney.
[68] R. Doc. No. 53, at 1.
[69] R. Doc. No. 59, at 10.

which he made many of the same allegations that he made in the present lawsuit.[70]

Holmes filed the instant lawsuit on April 13, 2023,[71] more than a year after the one-

year prescription period for § 1983 claims had run.[72] On this basis, the Court held

that Holmes's civil-rights conspiracy claim, as it pertains to the minute entry, is

prescribed.[73]

In a February 23, 2024 order granting a motion to dismiss for claims against

Ballay and White, the Court noted that, to the extent that Holmes's § 1983 claim is

analogous to a malicious prosecution claim, that claim is also prescribed because his

prosecution ended without conviction in 2021, at which point the claim for malicious

prosecution accrued.[74] The Court noted this previous determination in its May 28,

2024 order.[75] The Court also noted in its May 28, 2024 order as well as in its February

23, 2024 order that nothing in the record suggested that there was a basis to apply

Louisiana's *contra non valentem* principle to toll prescription.[76]

However, the Court declined to grant defendants' motion for summary

judgment to the extent that the civil-rights conspiracy claim relies on conduct that

occurred during the *Holmes v. Reddoch* litigation.[77] Because Holmes's complaint does

---

[70] R. Doc. No. 44, at 11.

[71] R. Doc. No. 1.

[72] *See Walker v. Epps*, 550 F.3d 407, 411 (5th Cir. 2008) ("The limitations period for § 1983 claims is determined by state personal injury law."); La. Civ. Code Art. 3492 ("Delictual actions are subject to a liberative prescription of one year.").

[73] R. Doc. No. 59, at 9–10.

[74] R. Doc. No. 44, at 9–12.

[75] R. Doc. No. 59, at 10–11.

[76] *Id.* at 11 n.45; R. Doc. No. 44, at 12–14.

[77] R. Doc. No. 59, at 11–12.

not provide information regarding the dates on which the alleged threats of criminal prosecution occurred, and because defendants' motion did not identify evidence from which the Court could conclude that Holmes learned of these threats more than one year before April 13, 2023, the Court declined to grant defendants' motion for summary judgment in that respect.[78]

In his response to defendants' motion for summary judgment, Holmes does not dispute that he was aware of the allegedly falsified minute entry and attempt to manufacture a *Heck* bar as of September 28, 2021. Nor does he dispute that his criminal case ended without conviction in 2021. Holmes's primary argument is that the alleged conspiracy to deprive him of his civil rights continued throughout the course of the *Holmes v. Reddoch* litigation, so his claim is not time-barred.[79] In addition, he invokes the Louisiana legal doctrine of *contra non valentum* "as set out more fully in [Holmes's] response to the DA defendants' Rule 12(b) motion."[80]

Because this Court declined to dismiss Holmes's claim insofar as it relies on actions taken during the course of the *Holmes v. Reddoch* litigation,[81] the Court need not address Holmes's arguments regarding these allegations. Additionally, with regard to Holmes's invocation of *contra non valentum*, the Court previously determined that nothing in Holmes's pleadings "suggests that there is any basis for applying the doctrine," noting that the doctrine does not suspend prescription merely

---

[78] *Id.*
[79] R. Doc. No. 75, at 6.
[80] *Id.*
[81] *See* R. Doc. No. 59, at 11–12.

based on his failure to bring claim sooner.[82] The Court also noted this previous determination in its May 28, 2024 order.[83] Holmes advances no new arguments as to why this doctrine should apply in his response to defendants' motion. Holmes therefore fails to apprise this Court of any errors of fact or law in its May 28, 2024 order regarding Holmes's federal claims. As such, the Court will deny Holmes's motions to alter or amend with respect to these claims.

### ii.    State-Law Claims

In addition to his federal claims, Holmes also maintains state-law claims against defendants, including defamation and malicious prosecution.[84] The Court noted that, like his federal claims, Holmes's state-law claims are subject to a one-year prescriptive period.[85] Therefore, following the Court's reasoning with respect to the federal-law claims, the Court held that Holmes's state-law claims were likewise time-barred to the extent that they overlap with his federal claims related to the minute entry.[86] However, as with the federal claims related to alleged conduct occurring during the course of the *Holmes v. Reddoch* litigation, the Court concluded that defendants did not meet their burden to demonstrate that they were entitled to summary judgement.[87] The Court therefore declined to grant defendants' motion to

---

[82] R. Doc. No. 44, at 12–13.
[83] R. Doc. No. 59, at 11 n.45.
[84] *See* R. Doc. No. 23, at 19–21 (amended complaint); R. Doc. No. 53, at 1 (April 30, 2024 minute entry narrowing claims).
[85] R. Doc. No. 59, at 12.
[86] *Id.*
[87] *Id.*

the extent that Holmes's claims rely on conduct that allegedly occurred during the course of litigation.[88]

Though confusingly stated in its original order, the Court notes that Holmes's state-law malicious prosecution claim is likewise time-barred. In the circumstances where a malicious prosecution claim may be brought pursuant to § 1983,[89] the claim "accrues when criminal proceedings end in favor of the claimant." *See Johnson v. Harris Cnty.*, 83 F.4th 941, 945 n.2 (5th Cir. 2023). A Louisiana malicious prosecution claims likewise accrues "on the date of termination of the prosecution." *Abshire v. Crump*, 285 So.3d 22, 25 (La. Ct. App. 2019). The Court in in its May 28, 2024 order noted that Holmes's prosecution ended without conviction in 2021, and his claim was therefore prescribed.[90]

With respect to Holmes's defamation claim, the Court noted that the only specific example of allegedly defamatory statements in Holmes's amended complaint is his allegation that Martiny, in a brief to the Fifth Circuit, "gratuitously asserted that [Holmes] was acting for a 'lewd and lascivious purpose', asserting that, other than motive, 'each and every one of the elements (of the crime of Video Voyeurism) is

---

[88] *Id.*

[89] Holmes does not properly state a claim for malicious prosecution pursuant to § 1983. "[T]here is no freestanding federal claim under § 1983 for malicious prosecution recognized in our circuit." *Yetiv v. Hall*, 132 F. App'x 1, at *4 (5th Cir. 2005). To state a claim of malicious prosecution through the Fourth Amendment, a plaintiff must show that the malicious prosecution "lead[] to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024). No such seizure is alleged in this case.

[90] R. Doc. No. 59, at 10–11.

actually satisfied.'"[91] The Court found that the brief in question appeared to have been filed with the Fifth Circuit in July 2021.[92] Pursuant to Louisiana law, the Court noted that actions "arising from allegedly defamatory statements made in a judicial proceeding 'cannot be brought by a party to the judicial proceeding until the proceeding is terminated.'"[93]

Because the Fifth Circuit issued its judgment in Case No. 21-30164, the first appeal and the case in which the brief was filed, on December 14, 2021[94] and issued its mandate on January 5, 2022,[95] the Court held that Holmes's defamation claim based on statements made during these proceedings was prescribed before April 13, 2023.[96] Alternatively, if that judgment did not terminate judicial proceedings because the case was before the Fifth Circuit on its second appeal in Case No. 23-30424,[97] the Court noted that Holmes's defamation claim would be premature.[98]

In addition to arguments regarding the merits of his defamation claim,[99] Holmes argues that his defamation claim is not time-barred because defendants have "since the *Reddoch* trial and during the course of the appeal continued their pattern

---

[91] *Id.* at 12 (citing R. Doc No. 23, ¶ 65).

[92] R. Doc. No. 59, at 12–13 (citing 5th Cir. Case No. 21-30164, R. Doc. No. 18, at 17–18).

[93] R. Doc. No. 59, at 13 (quoting *Doe v. Roman Cath. Church of Archdiocese of New Orleans*, 588 F. Supp. 3d 698, 720 (E.D. La. 2022) (Morgan, J.)).

[94] 5th Cir. Case No. 21-30164, R. Doc. No. 57-1.

[95] 5th Cir. Case No. 21-30164, R. Doc. No. 62-2.

[96] R. Doc. No. 59, at 13.

[97] *See* 5th Cir. Case No. 23-30424.

[98] R. Doc. No. 59, at 13 n.57.

[99] R. Doc. No. 75, at 7–9.

17

of defamation of [Holmes]."[100] In support of this argument, Holmes attaches a declaration to his response in which he states that Turlich made a defamatory statement about him in the comment section of a social media post regarding the jury verdict in *Holmes v. Reddoch* sometime between May 18, 2023 and May 26, 2023.[101] Holmes likewise attaches what he claims is a copy of this defamatory statement.[102] Holmes also states in his declaration that Turlich defamed him in a public forum during his campaign for reelection in Fall 2023[103] and that Martiny made defamatory statements in a brief appealing the May 2023 judgment in *Holmes v. Reddoch*.[104]

While Holmes in his attached declaration makes several claims of allegedly defamatory statements made within the prescriptive period, the Court notes that Holmes did not allege these facts in his amended complaint, filed on October 24, 2023.[105] The only specific facts alleged in Holmes's amended complaint in support of his defamation claim are regarding defendants' July 2021 brief in the Fifth Circuit.[106]

Accordingly, the Court will not consider the newly alleged facts that were not included in Holmes's amended complaint. This is proper despite the assertions in the amended complaint that defendants "persisted throughout the civil proceedings in portraying [Holmes] falsely as a person who was a threat to the safety of others, and

---

[100] *Id.* at 6.
[101] R. Doc. No. 75-1, ¶ 17.
[102] *Id.*; R. Doc. No. 75-7.
[103] R. Doc. No. 75-1, ¶ 18.
[104] *Id.* ¶ 19.
[105] *See generally* R. Doc. No. 23.
[106] *See id.* ¶ 65.

a sexual predator" and that Turlich "continues to defame [Holmes] . . . in recent postings on social media and other statements regarding the civil litigation, falsely portraying [Holmes] as a threat to the safety of children and other citizens."[107] These statements are merely conclusory and lack sufficient factual specificity to state a claim.

In Louisiana, a "[p]laintiff in a defamation suit must name the individual offenders and allege separate acts of defamation as to each, including specific defamatory statements." *Badeaux v. Sw. Comput. Bureau, Inc.*, 929 So. 2d 1211, 1218 (La. 2006). Allegations of defamatory statements must contain the requisite factual specificity.[108] "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Accordingly, the Court will not credit new factual allegations in support of Holmes's defamation claim that were not included in the amended complaint.

Nevertheless, the Court notes that after Holmes filed his response to defendants' motion for summary judgment, the Fifth Circuit issued its opinion[109] and

---

[107] *Id.* ¶¶ 65, 68.

[108] *See, e.g.*, *Myers v. Powell*, No. CV 12-2181, 2018 WL 619954, at *2 (E.D. La. Jan. 30, 2018) (Vance, J.) (dismissing a counterclaim for defamation *per se* alleging that "at various times continuing through the present day, [the plaintiff] made false statements to third parties that [the defendant] assaulted, battered and raped her" because there were "no additional details regarding any specific statements" and the allegations were "too vague to raise his right to relief above a speculative level").

[109] 5th Cir. Case No. 23-30424, R. Doc. No. 75.

entered final judgment[110] in Case No. 23-30424 on September 6, 2024—concluding litigation in the *Holmes v. Reddoch* case. The Court must therefore consider whether Holmes's defamation claim is still time-barred. Accordingly, the Court must determine whether Holmes's defamation claim became ripe on December 14, 2021, when the first appeal in which the allegedly defamatory statement was made concluded,[111] or on September 6, 2024, when the Fifth Circuit affirmed[112] the Court's judgment after trial in *Holmes v. Reddoch*.

Pursuant to Louisiana law, an action arising from allegedly defamatory statements made in a judicial proceeding "cannot be brought by a party to the judicial proceeding until the proceeding is terminated." *Doe v. Roman Cath. Church of Archdiocese of New Orleans*, 588 F. Supp. 3d 698, 720 (E.D. La. 2022) (Morgan, J.) (quoting *Calvert v. Simon*, 311 So. 2d 13, 15 (La. Ct. App. 1975)). The rationale for this rule is that "[a] party must be given the chance to prove the truth or falsity of their allegations before an opposing party can counterclaim for defamation and reputational harm." *Kalencom Corp. v. Shulman*, No. CV 17-5453, 2018 WL 1739213, at *5 (E.D. La. Apr. 11, 2018) (Zainey, J.). "Providing this opportunity allows not only for a cooling-off period to eliminate the necessity of a defamation suit, but also for the determination of the outcome of the original proceedings, which may bear on a party's ability to recover for defamation." *Ortiguerra v. Grand Isle Shipyard, LLC*, No. CV

---

[110] 5th Cir. Case No. 23-30424, R. Doc. No. 76.
[111] 5th Cir. Case No. 21-30164, R. Doc. No. 58 (judgment).
[112] 5th Cir. Case No. 23-30424, R. Doc. No. 76 (judgment).

22-309, 2023 WL 346089, at *3 (E.D. La. Jan. 20, 2023) (Barbier, J.) (citing *Ortiz v. Barriffe*, 523 So. 2d 896, 898 (La. Ct. App. 1988)).

The statements alleged in Holmes's amended complaint were made as part of Case No. 21-30164 before the Fifth Circuit[113]—Holmes's first appeal in *Holmes v. Reddoch*. In that case, Holmes appealed[114] from this Court's grant[115] of summary judgment in favor of the defendants based on the Court's finding that Holmes agreed to a diversionary program, making his claims *Heck* barred. Defendants' brief, in addition to arguing that *Heck* barred Holmes's § 1983 claims, also argued against the merits of Holmes's claims.[116] Indeed, defendants' allegedly defamatory statements arose in a section arguing that there was reasonable suspicion to question Holmes.[117]

Following trial in this Court, the jury found, among other things, that Holmes was unreasonably stopped in violation of the Fourth Amendment.[118] The defendants then appealed[119] the Court's judgment, arguing that they were entitled to judgment as a matter of law.[120] Regarding the finding that Holmes was unreasonably stopped, the defendants argued that "at a minimum, there existed reasonable suspicion to investigate whether *any* crime had occurred, was occurring or was about to occur."[121]

---

[113] 5th Cir. Case No. 21-30164, R. Doc. No. 18 (appellee's brief).

[114] E.D. La. Case No. 19-12749, R. Doc. No. 99 (notice of appeal).

[115] E.D. La. Case No. 19-12749, R. Doc. No. 98, at 14.

[116] 5th Cir. Case No. 21-30164, R. Doc. No. 18-1, at 14.

[117] *See id.* at 16–17.

[118] E.D. La. Case No. 19-12749, R. Doc. No. 219 (jury verdict form).

[119] E.D. La. Case No. 19-12749, R. Doc. No. 231 (notice of appeal).

[120] 5th Cir. Case No. 23-30424, R. Doc. No. 41, at 24.

[121] *Id.* at 31 (emphasis in original).

On September 6, 2024, the Fifth Circuit issued its opinion[122] affirming the Court's judgment. The Fifth Circuit entered its judgment[123] the same day—ending litigation in *Holmes v. Reddoch*.

The parties cite no case addressing whether proceedings terminate for purposes of a defamation claim when the proceeding in which the statements were made (here, the first appeal) ends but litigation in the case remains ongoing. And the Court is unaware of any case addressing this issue. However, considering the rationale for the rule—that the party who made potentially defamatory statements in litigation should have the chance to prove the truth of those statements before a defamation claim is brought—the Court concludes that the defamation claim accrued when the litigation in *Holmes v. Reddoch* finally concluded on September 6, 2024. Importantly, because the allegedly defamatory statements concerned whether there was reasonable suspicion to question Holmes, the truth of those statements remained in dispute throughout the trial and the final appeal.

While Holmes's claims were premature when filed, they are no longer premature. Accordingly, the Court will vacate its May 28, 2024 order to the extent

---

[122] 5th Cir. Case No. 23-30424, R. Doc. No. 75.
[123] 5th Cir. Case No. 23-30424, R. Doc. No. 76.

that it granted defendants' motion for summary judgment with respect to Holmes's defamation claim.

### iii.    Defamation Arguments not Previously Considered

In fully considering whether the Court's order should be amended with respect to Holmes's defamation claim, the Court reconsiders arguments raised in defendants' motion for summary judgment that were not addressed in this Court's May 28, 2024 order. Beyond arguing that Holmes's defamation claim is time-barred, defendants argue that plaintiff's defamation claim must fail because the statement alleged was not defamatory and because defendants are entitled to a qualified privilege for statements made in a judicial proceeding.[124] Defendants state that Holmes has failed to properly allege or to show that defendants are not entitled to a qualified privilege defense.[125]

Holmes argues that he is not required to disprove defendants' qualified privilege and that it is defendants' burden to prove that the qualified privilege applies.[126] Because the Court concludes that defendants are entitled to a qualified privilege defense, the Court does not address whether the statements were defamatory.

As a preliminary matter, the Court first notes that Turlich cannot be held liable for Martiny's statements as his attorney. Louisiana law provides that "[n]o

---

[124] R. Doc. No. 54-1, 15–17.
[125] *Id.* at 16–17.
[126] R. Doc. No. 75, at 9.

23

party to an action or proceeding is liable for any slanderous or libellous words uttered by his attorney at law." 13 La. R.S. § 3415. The Court therefore analyzes Holmes's defamation claim as to Martiny alone.

Pursuant to Louisiana law, four elements are required to sustain a claim for defamation: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 674 (La. 2006). "[E]ven when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified." *Costello v. Hardy*, 864 So. 2d 129, 141 (La. 2004).

To determine whether a qualified or conditional privilege applies, courts must first determine whether the "circumstances in which a communication was made satisfy the legal requirements for invoking the conditional privilege." *Jalou II, Inc. v. Liner*, 43 So. 3d 1023, 1033 (La. Ct. App. 2010). If the qualified privilege applies, the court must determine whether the privilege was abused. *Id.* To demonstrate that the qualified or conditional privilege was abused, the plaintiff must prove actual malice and demonstrate that the publisher "(a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity." *Hakim v. O'Donnell*, 144 So. 3d 1179, 1189 (La. Ct. App. 2014) (citing *Kennedy*, 935 So. 2d at 684).

In Louisiana, attorneys are entitled to a qualified privilege "regarding the pleadings and briefs which they file." *Miskell v. Ciervo*, 557 So. 2d 274, 275 (La. Ct.

24

App. 1990). "[I]n order for the privilege to apply, the statement must be material and must be made with probable cause and without malice." *Freeman v. Cooper*, 414 So. 2d 355, 359 (La. 1982). "An attorney must be free to allege facts constituting unacceptable behavior if there is any reasonable basis for such an allegation and if the behavior is relevant to the proceeding." *Id.*

Here, defendants' statement from the Fifth Circuit brief is as follows:

> The video voyeurism statute prohibits, in pertinent part: "The use of any camera, videotape . . . or any other image recording device . . . for the purpose of observing, viewing, photographing, filming, or videotaping a person where that person has not consented to the specific instance of observing, viewing, photographing, filming, or videotaping and either: (a) It is for a lewd or lascivious purpose." La. R.S. 14:283(A)(1)(a).

> Here, there is no question, and Plaintiff admits, that every one of the above elements is actually satisfied, other than perhaps Plaintiff's motives. As stated by the district court: "Prior to approaching Holmes, Reddoch knew that several girls spotted Holmes taking pictures of them, a schoolgirl's mother complained to the principal about that, the girls said the photography made them 'feel uncomfortable' based on what they learned in a class about strangers, and they specifically identified Holmes. These facts were sufficient to form a reasonable suspicion particularized to Holmes. . . . Any reasonable officer in Reddoch's position would therefore have had the requisite suspicion to question Holmes."[127]

Holmes acknowledges that this is the passage referred to in his amended complaint.[128]

The Court concludes that the qualified litigation privilege applies to Martiny's statements in the brief. While Holmes states that these statements were gratuitous

---

[127] 5th Cir. Case No. 21-30164, R. Doc. No. 18-1, at 17.
[128] R. Doc. No. 75, at 7.

because the only question in that appeal concerned the applicability of the *Heck* bar,[129] the Court is not convinced. Martiny's statements concerned whether Reddoch had reasonable suspicion to question Holmes. This was a key issue going to the merits of claims in the *Holmes v. Reddoch* litigation, and Martiny was free to make arguments regarding the merits of those claims. The Court therefore concludes that the statements were material to the litigation.

Furthermore, Martiny had probable cause to believe that these statements were true. The factual allegations in the defendants' brief amount to a claim that Holmes was taking photos of individuals without their permission and that Holmes had admitted to doing so. In a motion for summary judgment submitted by Martiny in the *Holmes v. Reddoch* case, Martiny made similar statements.[130] In the motion for summary judgment, Martiny pointed to statements in the arrest report[131] and Holmes's deposition[132] in support, which provided probable cause to believe that Holmes was taking photos of people without their permission and that the Sheriff had received complaints about this behavior. Martiny's statements were therefore

---

[129] R. Doc. No. 75, at 7.

[130] E.D. La. Case No. 19-12749, R. Doc. No. 68-1, at 1 (motion for summary judgment); R. Doc. No. 76, at 7 (reply in support of motion for summary judgment).

[131] E.D. La. Case No. 19-12749, R. Doc. No. 68-3, at 2 ("On Sunday, September 23, 2018, Plaquemines Parish Sheriff's Office deputies had received several complaints throughout the evening regarding a white male subject photographing children at the Our Lady of Perpetual Help Fair . . . .").

[132] E.D. La. Case No. 19-12749, R. Doc. No. 76-1, at 65–67 (stating in Holmes's deposition that the photos he took depicted children on carnival amusement rides, that he did not know any of the children, that he was not interested particularly in who the children were, and that his purpose in doing so was to test out a new camera lens).

material to the litigation and made with probable cause. The litigation privilege applies.

Because the Court concludes that the litigation privilege applied to Martiny's statements, the Court must now consider whether that privilege was abused. First, in response to defendants' argument that Holmes has provided no evidence to demonstrate that the qualified litigation privilege should not apply in this case, Holmes does not point to any evidence that Martiny had actual knowledge of the falsity of any of his claims. Rather, Holmes argues that defendants adopted the allegedly defamatory statements of the deputies who wrote the arrest report.[133]

In Holmes's amended complaint, the basis of his defamation claim is that defendants had "knowledge of the falsity of the reports of [the officers], in the same manner as described above herein with regard to [Ballay] and [White]." [134] Looking the allegations regarding Ballay and White for the basis of Holmes's accusation of knowledge, Holmes asserts that Ballay and White "knew or should have known" that the deputies report contained falsities.[135] It further states that if they had "bothered to contact the one named purported independent witness placed at the scene[,] . . . she would have flatly contradicted the account" in the report and that "none of the other deputies who participated in the incident would corroborate the false accounts."[136] The amended complaint further states that defendants had "the benefit

---

[133] R. Doc. No. 75, at 8.
[134] R. Doc. No. 23, ¶ 65.
[135] *Id.* ¶ 33.
[136] *Id.*

of [Holmes's] deposition and photographic images and data, and the depositions [of others]" to know that Holmes was not a threat to the safety of others or a sexual predator.[137] The Court interprets these statements as an allegation that Martiny made the allegedly defamatory statements in reckless disregard of the truth.

"To establish reckless disregard of the truth, a plaintiff must prove that the publication was deliberately falsified, published despite the defendant's awareness of probable falsity, or the defendant in fact entertained serious doubts as to the truth of his publication." *Jalou II*, 43 So. 3d at 1037 (La. Ct. App. 2010). "[E]ven proof of gross negligence in the publication of a false statement is insufficient to prove reckless disregard." *Kennedy*, 935 So. 2d at 688. And a "failure to investigate does not present a jury question on whether a statement was published with reckless disregard for the truth." *Id.* at 689.

The allegations in Holmes's amended complaint amount to an argument that Martiny would have known that the suggestions in the police report were false if he had bothered to investigate. And Holmes points to no other evidence that Martiny was aware of the probable falsity of his suggestions or that he in fact had serious doubts as to their truth. Holmes's allegations are therefore insufficient to allege an abuse of the conditional litigation privilege, and Holmes points to no evidence demonstrating a genuine issue of material fact regarding whether the privilege has

---

[137] *Id.* ¶ 65.

been abused. Accordingly, defendants are entitled to summary judgment with respect to Holmes's defamation claim.

### b.     Claims Against Turlich in his Official Capacity

The Court's May 28, 2024 order next addressed claims against Turlich in his official capacity pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[138] The Court held that Holmes's claims against Turlich in his official capacity as Sheriff of Plaquemines Parish fail as a matter of law.[139] Because *Monell* claims require proof of an official policy or custom, and because Holmes failed to allege facts suggesting that an official policy or custom existed related to his claims against Turlich, the Court held that defendants were entitled to summary judgment with respect to these claims.[140]

Holmes argues that he is not required to allege an official policy or custom to sustain a *Monell* claim against Turlich in his official capacity because, pursuant to Louisiana law, Turlich is not an agent of Plaquemines Parish, but rather he is the entity of the office of sheriff "in and of himself."[141] Holmes therefore states that Turlich's "edicts or acts may fairly be said to represent official policy of his office."[142]

Pursuant to *Monell*, "[s]ection 1983 municipal liability requires proof of three elements: (1) a policymaker, (2) an official policy or custom, and (3) a violation of

---

[138] R. Doc. No. 59, at 13–14.
[139] *Id.* at 14.
[140] *Id.* at 14–15.
[141] R. Doc. No. 75, at 6–7.
[142] *Id.* at 7.

constitutional rights whose 'moving force' is that policy or custom." *Jason v. Par. of Plaquemines*, No. 16-2728, 2017 WL 993152, at *5 (E.D. La. Mar. 15, 2017) (Vance, J.) (quoting *Davis v. Tarrant Cnty.*, 565 F.3d 214, 227 (5th Cir. 2009)). "Thus, a plaintiff seeking to impose liability on a municipality under section 1983 must 'identify a municipal policy or custom that caused the plaintiff's injury.'" *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997)).

The Fifth Circuit has said that *Monell*'s official-policy requirement can be met in at least three different ways:

> (1) [W]hen the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy; (2) Where no 'official policy' was announced or promulgated but the action of the policymaker itself violated a constitutional right; and (3) Even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately indifferent to the need.

*Burge v. Par. of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (internal citations and quotations omitted) (alterations in original). In the second category, "the municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved." *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990).

However, "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise

30

to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). The policymaker must also "possess[] final authority to establish municipal policy *with respect to the action ordered*." *Id.* at 481 (emphasis added). Whether an individual has final policymaking authority in a particular area is a question of state law. *Id.* at 483.

Pursuant to the Louisiana Constitution, a sheriff is a "virtually . . . autonomous local government official." *Anderson v. Larpenter*, No. CV 16-13733, 2017 WL 3064805, at *14 (E.D. La. July 19, 2017) (Africk, J.) (citing *Burge*, 187 F.3d at 468) (alternations in original). Louisiana law recognizes that, in the area of law enforcement, sheriffs are final policymakers within the confines of their parish. *Id.*

Holmes's remaining factual allegations against Turlich, with respect to his § 1983 claim, are that he and his attorney Martiny conspired to deprive Holmes of his constitutional rights by threatening Holmes with reinstatement of criminal charges.[143] On its face, the amended complaint does not appear to allege acts taken within the law-enforcement function as opposed to a prosecutorial function. Indeed, Louisiana law provides that, "[s]ubject to the supervision of the attorney general, . . . the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. Code Crim. Proc. art. 61. This Court has not been provided any support which would lead it to conclude that threatening criminal charges falls within

---

[143] R. Doc. No. 23, at ¶ 61. Holmes alleges that Turlich is liable for actions allegedly taken by Martiny, his lawyer. *Id.* ¶ 81.

Turlich's final policymaking authority in some other respect. The Court therefore declines to alter or amend its judgment regarding claims against Turlich in his official capacity.

### c.    Rule 56(d)

Lastly, Holmes argues that the Court should not have granted summary judgment because discovery is ongoing.[144] Holmes cites Federal Rule of Civil Procedure 56(d) and argues that the case is unripe for summary judgment because discovery requests are outstanding and because depositions have not yet been taken.[145] Holmes does not state what he anticipates that discovery will reveal or how discovery will reveal evidence to sustain his claims.

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "Rule 56(d) motions for additional discovery are 'broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013). "When a party is not given a full and fair opportunity to discovery information essential to its opposition to summary judgment, the limitation on

---

[144] R. Doc. No. 75, 10–11.
[145] *Id.*

discovery is reversible error." *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 892 (5th Cir. 2021) (citation omitted).

Nevertheless, the party filing the Rule 56(d) motion or affidavit must demonstrate "how additional discovery will create a genuine issue of material fact." *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 445 (5th Cir. 2001) (citation omitted). More specifically, "the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Biles*, 714 F.3d at 894 (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). "The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

Holmes has not stated what he believes discovery will reveal or how it will create a genuine dispute of material fact. Indeed, this Court's partial grant of summary judgment relied on time-bars and dates that are not in dispute as well as deficiencies in the pleadings that Holmes has not sought to amend. Holmes has therefore provided this Court no basis upon which to believe that its grant of summary judgment was premature, despite the fact that discovery was ongoing. The Court will not alter or amend its order on this basis.

## III.   CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Holmes's motions to alter or amend the May 28, 2024 order are **GRANTED IN PART AND DENIED IN PART**. Holmes's motions are **GRANTED** to the extent that the Court's order dismissed Holmes's defamation claim as time-barred. Notwithstanding, defendants' motion for summary judgment with respect to Holmes's defamation claim is **GRANTED** in accordance with the reasoning contained herein. The motions to vacate are **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Holmes's malicious prosecution state-law claim is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, September 23, 2024.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

34